DETROIT UNITED RAILWAY *v.* BARNES PAPER CO.

1. Statutes—Repeal—Street Railways.

   Act No. 133, Pub. Acts 1905, purporting to amend 2 Comp. Laws, § 6446, 3 How. Stat. (2d Ed.) § 6995, supersedes Act No. 101 of the same year, with which it is inconsistent and which attempts to amend the same section of the statutes relating to the powers of street railways to construct their lines in or upon the streets of villages, etc., under prescribed conditions. *Detroit United Ry.* v. *Barnes Paper Co.,* 149 Mich. 675 (113 N. W. 285), overruled.

2. Street Railways—Eminent Domain.

   Under the second act the power is conferred upon street railroads to condemn lands upon which to construct an embankment for its tracks, and an ordinance of a village permitting the building of the embankment, etc., is valid: overruling *Detroit United Ry.* v. *Barnes Paper Co., supra.*

3. Same—Statutes—Taking Private Property.

   The power conferred by the legislative enactment (Act No. 133, Pub. Acts 1905), to exercise eminent domain is valid, although the enactment, referring to another statute, grants the same power of eminent domain as is possessed by railroad companies.

Certiorari to Oakland; Smith, J.   Submitted June 12, 1912.   (Docket No. 94.)   Decided November 8, 1912.

Eminent domain proceedings by the Detroit United Railway against the Barnes Paper Company. An order dismissing the petition is reviewed by petitioner on writ of certiorari. Reversed.

*James H. Lynch,* for appellant.

*Davis & Bromley,* for appellee.

Plaintiff in certiorari filed its petition for the purpose of condemning a strip of land 120 feet in width and about 500 feet long belonging to defendant. Objections thereto

were filed, brought on to be heard, and after a hearing the petition was dismissed. It was made to appear that plaintiff was organized under the provisions of chapter 168, 2 Comp. Laws (Chap. 111, 3 How. Stat. [2d Ed.] ), commonly known as the street railway act, and was operating its road through the village of Rochester, Oakland county, under an ordinance granted by the village authorities, pursuant to which its track was carried upon a trestle and bridges for a distance of about 1,000 feet in a street of the village; the purpose being to cross the tracks and right of way of the Michigan Air Line Railroad. Plaintiff proposes to condemn land adjacent to the street and build an embankment, with openings therein for two intersecting streets, to carry its track over the said railroad. The difference between the present and the proposed method is that, instead of carrying its track upon a trestle in the street, it will carry it on an embankment and bridges upon its own private right of way.

The objections of the defendant are (1) that the plaintiff is not authorized to maintain condemnation proceedings; (2) that its right to maintain a railway in the village is derived from an ordinance which permits it to carry its tracks upon a trestle in the street; (3) that its right to build and maintain the embankment in question has been determined adversely to its present contention and effort by the final judgment of this court; (4) that under the provisions of Act 101 of the Public Acts of 1905 the authority of the village to permit the construction of overhead or elevated tracks is limited to a permission to carry them upon a trestle. It is matter of history, evidenced by the records of this court and of the court below, that plaintiff at one time filed a petition to condemn 90 feet in width of the same strip of land here involved, proposing at the same time to use 30 feet in width of the street, in addition to said 90 feet, as the base for an embankment to support its tracks. The proceeding then instituted was dismissed, and the determination of the court below was affirmed. *Detroit United Ry. Co.* v. *Paper Co.*, 149 Mich. 675

(113 N. W. 285). It is this judgment which defendant presents as *res adjudicata* the present proceeding and contention of plaintiff.

OSTRANDER, J. (*after stating the facts*). While I participated in the decision and approved the opinion handed down in *Detroit United Ry.* v. *Paper Co.*, 149 Mich. 675 (113 N. W. 285), I am now convinced that this court was in error, and that the decision should be overruled. The decision rested primarily upon the idea that when the legislature passes two inconsistent acts at the same session, each amendatory of the same section of an existing statute, and each providing that the section shall be amended "to read as follows," both acts may be regarded as in force. The legislature of 1905 passed and gave immediate effect to Acts No. 101 and No. 133. They are set out in the margin. Both purport to amend

No. 101.

AN ACT to amend section thirteen of act number thirty-five of the Public Acts of Michigan for the year eighteen hundred sixty-seven, as amended by act number twelve of the Public Acts of Michigan for the year eighteen hundred ninety-three, and act number two hundred thirty-four of the Public Acts of Michigan for the year nineteen hundred one, being section six thousand four hundred forty-six of the Compiled Laws of eighteen hundred ninety-seven.

*The People of the State of Michigan enact:*

SECTION 1. Section thirteen of act number thirty-five of the Public Acts of Michigan for the year eighteen hundred sixty-seven, as amended by act number twelve of the Public Acts of Michigan for the year eighteen hundred ninety-three, and act number two hundred thirty-four of the Public Acts of Michigan for the year nineteen hundred one, being section six thousand four hundred forty-six of the Compiled Laws of eighteen hundred ninety-seven, is hereby amended to read as follows:

SEC. 13. Any street railway corporation organized under the provisions of this act may, with the consent of the corporate authorities of any city or village, given under and by an ordinance or ordinances, duly enacted for that purpose, under such rules, regulations and conditions as in and by said ordinance and ordinances shall be prescribed, construct, use, maintain and own a street railway for the transportation of passengers, in, upon, above or under the lines of such streets and ways in said city or village as shall be designated and granted from time to time for that purpose in the ordinance or ordinances granting such consent; but no such railway company shall construct any railway in, upon, above or under the streets of any city or village until the company shall have ac-

2 Comp. Laws, § 6446 (3 How. Stat. [2d Ed.] § 6995), and both provide that said section shall be amended "to read as follows." In the two acts the section amended is made to read very differently. But, however much or little the difference, the authorities, agreeable with what now appears to me to be the clearest reason, regard the last act as repealing the earlier one, leaving the section to stand as last amended. Endlich on Interpretation of Statutes, § 196, and cases cited; *People* v. *Hiller*, 113 Mich. 209 (71 N. W. 630; 23 Am. & Eng. Enc. Law [1st Ed.], p. 488); Cooley's Constitutional Limitations (7th Ed.), pp. 215, 216; *People* v. *Pritchard*, 21 Mich. 236. Act No. 101, Public Acts 1905, expressly limited the powers of the municipal authorities to permitting street railways to be constructed and operated "above the streets and highways by means of trestles, at points where such construction and operation are deemed

cepted in writing the terms and conditions upon which they are permitted such use of such streets; and any such corporation may extend, construct, use and maintain its road in, along, above or under the streets or highways of any township adjacent to said city or village, upon such terms and conditions as may be agreed upon by the company and the township board of the township, which agreement, and the acceptance of the company of the terms thereof, shall be recorded by the township clerk in the records of his township. Any company organized under the provisions of this act may construct, use, maintain and own a street railway for the transportation of passengers in, along, above or under the streets and highways of any township, upon such terms and conditions as may be agreed upon by the company and the township board, which agreement, and the acceptance by the company of the terms thereof, shall be recorded by the township clerk in the records of the township: *Provided*, that such company may construct, maintain and own a street railway as is herein provided along, above or under any highway heretofore laid out or constructed, or hereafter to be laid out or constructed by the board of county road commissioners, or any highway adopted as a county road by the board of county road commissioners and under their control, upon such terms and conditions as may be agreed upon by the company and the said board of county road commissioners, which agreement, and the acceptance by the company of the terms thereof, shall be recorded by the county clerk in the records of said board: *And, provided further*, that this section shall confer no authority to construct and operate elevated railways, so-called, but shall only give to municipalities the right to authorize the construction and operation of street railways above the streets and highways by means of trestles, at points where such construction and operation are deemed to be necessary by reason of such railway crossing highways, streets or

to be necessary by reason of such railway crossing highways, streets or other railways." Act No. 133 of the same session contained no such limitation, and did confer upon street railway companies the right to construct, use, maintain, and own a street railway upon private rights of way with "the same power and right of eminent domain as is now possessed by railroad companies."

It is therefore apparent that if Act No. 101 was repealed by the later act the former decision of the court is wholly unsupported, since it determined that an ordinance of the village, relied upon by plaintiff, was invalid, because power to enact it was expressly withheld by the terms of said Act No. 101. No question was considered, and no point decided, except the one that the ordinance of the village which permitted the plaintiff to construct an embankment and to carry its tracks thereon, instead of on trestles, was invalid because of the express limita-

---

other railways, and in all cases where any street railway company has heretofore constructed its railway upon trestles above any street or highway or other railway, with the knowledge and consent, express or tacit, of the municipal authorities, such trestles shall be deemed legal structures, the same in all respects as if such railways had been constructed upon the streets or highways at such points: *Provided further*, that nothing in this section contained shall be in any way construed so as to in any way affect any rights which abutting property owners may have to damages or additional damages by reason of the erection or maintenance of trestles or other structures above the street heretofore or hereafter erected or maintained under this section.

This act is ordered to take immediate effect.

Approved May 10, 1905.

### No. 133.

An act to amend section thirteen of act number thirty-five of the laws of eighteen hundred sixty-seven, entitled "An act to provide for the formation of street railway companies," being section six thousand four hundred forty-six of the Compiled Laws of eighteen hundred ninety-seven, as amended by act number two hundred thirty-four of the Public Acts of nineteen hundred one.

*The People of the State of Michigan enact:*

Section 1. Section thirteen of act number thirty-five of the laws of eighteen hundred sixty-seven, entitled "An act to provide for the formation of street railway companies," being section six thousand four hundred forty-six of the Compiled Laws of eighteen hundred ninety-seven, as amended by act number two hundred thirty-four of the Public Acts of nineteen hundred one, is hereby amended to read as follows:

tions of the power of the village found in said Act No. 101. It followed as of course that, having no right to carry its tracks over streets and other railways, except upon trestles, the plaintiff could not condemn land for the purpose of enabling it to carry its tracks upon an embankment to be constructed upon the land sought to be condemned. The present proceeding concerns the same parties, and is instituted to take a portion of the same land, and more. But it is a new proceeding; and the former decision of this court is not *res adjudicata* the rights of either party any more than it would have been if said Act No. 101 had been expressly repealed by the legislature since that decision was made.

The right of plaintiff to condemn private property for its uses is conferred, in terms, in said Act No. 133. The reference in the act to the provisions of another statute, making them, and the procedure indicated by them, ap-

---

SEC. 13. Any street railway corporation organized under the provisions of this act, may, with the consent of the corporate authorities of any city or village, given in and by an ordinance or ordinances duly enacted for that purpose, and under such rules, regulations and conditions as in and by such ordinance or ordinances shall be prescribed, construct, use, maintain and own a street railway for the transportation of passengers in and upon the lines of such streets and ways, in said city or village, as shall be designated and granted from time to time for that purpose, in the ordinance or ordinances granting such consent; but no such railway company shall construct any railway in the streets of any city or village until the company shall have accepted in writing the terms and conditions upon which they are permitted to use said streets; and any such company may extend, construct, use and maintain their road in and along streets or highways of any township adjacent to said city or village, upon such terms and conditions as may be agreed upon by the company and the township board of the township, which agreement, and the acceptance by the company of the terms thereof, shall be recorded by the township clerk in the records of his township. Any company organized under the provisions of this act may construct, use, maintain and own a street railway for the transportation of passengers in and along the streets and highways of any township upon such terms and conditions as may be agreed upon by the company and the township board of the township, which agreement, and the acceptance by the company of the terms thereof, shall be recorded by the township clerk in the records of the township; and any such company may construct, use, maintain and own a street railway upon private rights of way and all such companies shall, when necessary to enter upon and use private property in such construction and operation, have the same power and right of eminent do-

plicable in proceedings of this nature, does not invalidate the legislation. *Clay* v. *Improvement Co.*, 34 Mich. 204, 208, 209.

The plaintiff nowhere avers that it has secured the permission of the village of Rochester to lay its tracks and operate cars upon the land sought to be condemned. The failure to do so is not made the ground of objection. It was and is objected that plaintiff is now operating its road in the village by permission of the village, which permission relates to and provides for the operation of the road in the street upon a trestle. In the former record it appeared that permission had been given to plaintiff to build an embankment to take the place of the trestle. Whether that ordinance is now in force does not appear. The defendant does not make, and its argument does not suggest, the point that a street railway may not, after securing the permission of, or a franchise from, a municipality to oper-

---

main as is now possessed by railroad companies. All proceedings at law or in equity necessary to give this section effect shall be the same as proceedings for the condemnation of property for companies organized under the general railroad law and all statutes relative to the exercise of the right of eminent domain for railroad purposes are hereby made applicable to proceedings under this act: *Provided,* that any such company may construct, use, maintain and own a street railway as is herein provided along any highway heretofore laid out or constructed or hereafter to be laid out or constructed by the board of county road commissioners or any highway adopted as a county road by the board of county road commissioners and under their control, upon such terms and conditions as may be agreed upon by the company and the said board of county road commissioners, with the approval of a majority of the board of supervisors, which agreement, and the acceptance by the company of the terms thereof, shall be recorded by the county clerk in the records of said board. Excepting, however, that whenever the right of way for such railways is acquired by the exercise of the power and right of eminent domain, the person, association or corporation acquiring the same under and by virtue of such power and right, shall not thereby acquire any right, title or interest in and to any ores or minerals either upon or beneath the surface of such part of the right of way, but the same shall remain the property of the owners of the land or ores and minerals at the time the right of way is so acquired. And said owners may, without let or hindrance, mine, take and carry away all such ores and minerals, and in doing so the said owners shall not be required to protect the surface of such right of way from being damaged or endangered by the removal of such ores and minerals.

This act is ordered to take immediate effect.

Approved May 18, 1905.

ate a railway in a highway, and after laying its tracks therein, move them, or a portion of them, without permission, to land adjacent to the highway and operate the road over its own land. The subject is not referred to in the brief for plaintiff appellant. It is sufficient, for the purposes of this opinion, to indicate that the point is not presented or considered.

The objections which were made should have been overruled and the petition retained for further proceedings. The order of the circuit court dismissing the petition is reversed, without costs to either party.

STEERE, McALVAY, BROOKE, STONE, and BIRD, JJ., concurred with OSTRANDER, J. MOORE, C. J., concurred in the result.